IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Shahid Abdu Samad,[1] | ) | Civil Action No. 8:12-cv-3486-JFA-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[2]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI")[3].  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

---

[1]Plaintiff's birth name is Robert Ellis. [R. 362.] While Plaintiff may be referred to in certain treatment notes of record as Robert Ellis, the Court will use Plaintiff's reported legal name, "Shahid Samad" [*id.*] in this Report and Recommendation.

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

On June 5, 2009, Plaintiff filed an application[4] for supplemental security income ("SSI"), alleging an onset of disability date of January 1,2009.  [*See*, R. 103-109.]  The claim was denied initially on September 25, 2009  [R. 48]  and upon reconsideration on June 4, 2010 [R. 60]. Thereafter, the claimant filed a written request for hearing and, on April 19, 2011, appeared with an attorney and testified at a hearing before Administrative Law Judge ("ALJ") Richard L. Vogel.  [R. 31-45.]

The ALJ issued a decision on May 13, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R.7-26.]  At Step 1,[5] the ALJ found Plaintiff had not engaged in substantial gainful activity since June 5,  2009, the application date.  [R. 12, Finding 1.]  At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: HIV and depression/PTSD; additionally, the ALJ found Plaintiff had non-severe impairments of a history of heroin use and a history of left knee osteoarthritis.  [R. 12, Finding 2.]  At Step 3, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  [R. 13, Finding 3.]  Specifically, the ALJ concluded Plaintiff's HIV does not meet Listing 14.08A, B, C, D, E, F, G, H, I, J or K.  [R. 13–14.] The ALJ concluded that Plaintiff's mental impairments do not meet or medically equal the criteria of Listing 12.04 and 12.06. [R. 14–16.] With respect to the combined

---

[4] It appear Plaintiff also filed an application for Disability Insurance Benefits ("DIB") [R. 110-116], which was also denied [R. 46-47.] It also appears, however, the DIB claim was denied because Plaintiff's DIB insured status was not met at or after the alleged onset date. [R. 117.]   In any event, Plaintiff has not appealed the decision regarding DIB.

[5] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

effect of the severe and non-severe impairments, the ALJ found that they are not at least equal in severity to those described in Listings 14.08, 12.04 and 12.06. [R. 15–16.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found he retained the RFC to perform the full range of medium unskilled work as defined in 20 CFR 416.967(b). [R. 16, Finding 4.] Based on this RFC, the ALJ determined at Step 4 that while Plaintiff is unable to perform his past relevant work as a truck driver [R. 20 Finding 5], the Medical-Vocational Rules support a finding that the claimant is "not disabled." [R. 20, Finding 7.] Accordingly, the ALJ concluded Plaintiff was not under a disability, as defined by the Act, since June 5, 2009. [R. 21, Finding 8.]

Plaintiff requested Appeals Council review of the ALJ's decision, and on October 12, 2012, the Appeals Council declined. [R. 1–3.] Plaintiff filed this action for judicial review on December 11, 2012. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the following errors require reversal of the ALJ's decision:

1. Because Plaintiff is limited to no more than "light" exertional level work, a finding of disability is directed under the Grid Rule 202.06 [Doc. 32 at 20–22];

2. The ALJ failed to assign weight to the opinions of the treating physicians Dr. Law and Dr. Osher, and improperly rejected the opinions of treating sources, choosing instead to substitute his own personal medical theories [*id.* at 22–30; Doc. 38 at 2–9];

3. The ALJ erred in not finding Plaintiff's knee pain and chronic cough to be severe impairments [Doc. 32 at 30–33; Doc. 38 at 9–10];

4. The ALJ's RFC failed to accommodate all of Plaintiff's physical and mental limitations supported by the record evidence [Doc. 32 at 33–37; Doc. 38 at 10–12]; and

3

5.      The ALJ improperly relied on the Grid Rules to deny Plaintiff's claim at Step 5 without any testimony from a vocational expert with respect to Plaintiff's exertional and non-exertional limitations [Doc. 32 at 37-38; Doc. 38 at 12-13].

The Commissioner contends the decision is supported by substantial evidence, specifically arguing

1.      The ALJ reasonably determined that Plaintiff's knee pain and chronic cough were not severe impairments [Doc. 36 at 12–14];

2.      The ALJ properly evaluated the medical opinions of record and explained his analysis, consistent with the relevant regulations and precedent [*id.* at 14–20];

3.      The ALJ conducted a proper RFC assessment based on his analysis of the medical evidence and opinions of record [*id.* at 20–24]; and,

4.      The ALJ reasonably determined that the record did not support any non-exertional limitations and, thus, properly relied on the Grids at Step 5 [*id.* at 24–25].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

4

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6] With remand under sentence

---

[6]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

8

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical

9

and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

## C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[7] 20 C.F.R. § 404.1520(d).

---

[7] The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's RFC[8] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the RFC to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[9]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[8]RFC is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[9]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th

13

Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

### APPLICATION AND ANALYSIS

**Brief Medical History**

Plaintiff was diagnosed in 1982 with HIV and now has AIDS.  [R. 362.]  According to Plaintiff's counsel, Plaintiff previously received SSI benefits due to PTSD, however, those benefits ceased upon Plaintiff's incarceration on drug charges in 2005.[10]  [R. 431.]

---

[10] While not dispositive or binding upon the ALJ, the Court finds it interesting that Plaintiff was considered disabled prior to his incarceration and that prison records are replete with evidence of Plaintiff's continuing ailments, but that the ALJ would find Plaintiff not disabled, without a discussion of any change in condition or rehabilitation in the intervening period.

Plaintiff has a history of heroin use which ended after his incarceration. [R. 362.] Once released from prison in June 2009, Plaintiff file the instant application for SSI benefits claiming disability due to his HIV positive status and mental illness. [R. 171.] Plaintiff alleges he has pain in his joints, problems breathing and he is unable to stand for long periods of time. [*Id.*] Plaintiff previously worked as a truck driver and part-time in his brother's barber shop between 1985 to 2000; he was also on disability from 2000–2005 [R. 182], and worked performing housekeeping while in prison at Broad River Correctional Institution from 2006 to 2008 [R. 172, 174].

**Use of Grids**

Plaintiff argues that the ALJ erred in applying the Grids to find him not disabled and that the ALJ should have used the testimony of a vocational expert ("VE") instead because the Grids do not apply to a claimant who suffers from non-exertional impairments. [See, Doc 32 at 20–22.] The Court agrees.

As stated above, the ALJ found that Plaintiff suffered from severe impairments of HIV and depression/PTSD. [R. 12.] The ALJ also concluded that Plaintiff's mental impairments, while not meeting Listing requirements, resulted in mild difficulties in social functioning and mild to moderate difficulties with regard to concentration, persistence or pace. [R. 15.] Ultimately, the ALJ determined that Plaintiff's severe depression/PTSD could be accommodated by limiting him to unskilled work, reasoning that "claimant appears to have significant improvement for his mental health issues with medication." [R. 18.]

In *Grant v. Schweiker*, the Fourth Circuit Court of Appeals held that where a claimant demonstrates the presence of non-exertional impairments, the Commissioner, in order to prevail, must be required to prove by VE testimony that, despite the claimant's

18

combination of non-exertional and exertional impairments, specific jobs exist in the national economy which he or she can perform.  699 F.2d 189 (4th Cir.1983).  A non-exertional impairment is an impairment that is present whether the claimant is attempting to perform the physical requirements of the job or not.  *See Gory v. Schweiker*, 712 F.2d 929 (4th Cir.1983); *see also* 20 C.F.R. § 404.1569a.  The Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments. *Id.* at 192. Thus, when a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker*, 889 F.2d at 49; *Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir.1985); *Cook v. Chater*, 901 F.Supp. 971 (D.Md.1995).

Every non-exertional condition, however, does not rise to the level of a non-exertional impairment. The proper inquiry is whether there is substantial evidence to support the finding that the non-exertional condition affects an individual's residual capacity to perform work of which he is exertionally capable.  *Walker*, 889 F.2d at 49; *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir.1984).  Accordingly, the Grids may still be used to direct a finding of not disabled where non-exertional impairments, even severe, do not significantly reduce a claimant's occupational base.  *See Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir.1989)("If a non-strength impairment, even

19

though considered significant, has the effect only of reducing [the] occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability."); *see also Gentry v. Secretary*, No. 85–5751, 1986 WL 17763 at *1, (6th Cir.1986)(In a case where the impairments included migraine headaches, the court held that "[n]onexertional limitations preclude use of the grid only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level."); *cf. Guyton v. Apfel*, 20 F.Supp.2d 156, 163 (D.Mass.1998)(discussing reliance on Grids where non-exertional limitations were found to not significantly effect claimant's ability to engage in substantial gainful activity); *Egleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir.1988)(presence of non-exertional limitations does not preclude use of the Grids if non-exertional limitations do not further limit the claimant's ability to perform work).

In his decision, the ALJ made no findings regarding whether the limitations resulting from Plaintiff's mental impairments had "little or no effect on the occupational base of unskilled medium work;" rather, he concluded that "[s]ince the claimant has the residual functional capacity to perform the full range of unskilled work at the medium exertional level, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.15."  [R. 21.]   Curiously, however, the ALJ did not explain how someone who is mild to moderately impaired in his concentration, persistence or pace would be able to perform a full range of medium work; nor does such a degree of impairment square with the ALJ's assumption that Plaintiff's limitations would have little or no effect on the occupational base of unskilled medium work.

This district court has previously found that moderate difficulties in maintaining social functioning or concentration, persistence or pace would obviously affect the

occupational based for unskilled work, precluding reliance on the Grids to direct a finding of not disabled. *Phillips v. Astrue*, 2012 WL 3765184, *4 (D.S.C. 2012); *Bonds v. Astrue*, No. 07–1135, 2008 WL 2952446, at * 11–12 (D.S.C. July 29, 2008) (whether Plaintiff's moderate impairment in the area of concentration, persistence and pace eroded the occupational base and to what degree it was eroded was a determination for a vocational expert); *see also*, *Chapa v. Astrue*, No. 05–253, 2008 WL 952947, at * 6 (N.D.T. Apr. 8 2008) (case reversed where ALJ applied Grids to direct a finding of not disabled, instead of obtaining vocational expert testimony, where claimant had moderate impairment in the area of concentration, persistence and pace); *Millhouse v. Astrue*, No. 08–378, 2009 WL 763740, at * 4 (M.D.F. Mar. 23, 2009)(use of Grids to direct a find of not disabled improper where ALJ has found that Plaintiff has a severe impairment of depression, which means that it significantly affects the Plaintiff's ability to work).  In light of this case law, the Court finds that the ALJ in this case improperly took on the role of the VE by relying exclusively on the grids in finding Plaintiff not disabled although he suffers from both exertional and nonexertional limitations.  *See Gory*, 712 F.2d at 931.

Thus, based on the above, this Court is unable to conclude that the ALJ's finding of no disability is supported by substantial evidence.  Therefore, remand is required so that a VE can be called to address this issue in response to a proper hypothetical which includes all the Plaintiff's impairments.  *Fenton v. Apfel*, 149 F.3d 907, 910 (8th Cir.1998)("The Secretary is required to produce vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, if ... he or she is precluded from performing a full range of a particular work classification....")

21

With respect to the remainder of Plaintiff's contentions of error by the ALJ, on remand the ALJ should reconsider and re-evaluate the evidence as part of the reconsideration of those claims. *Hancock v. Barnhart*, 206 F.Supp.2d 757, 763–764 (W.D.Va.2002) (on remand, the ALJ's prior decision as no preclusive effect, as it is vacated and the new hearing is conducted de novo ).

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 7, 2014
Greenville, South Carolina

22